LEONORA E. WINSLOW *vs.* DAVID EINHORN *et al.*
NOVEMBER 15, 1938.
PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CAPOTOSTO, J.   This is an action of trover to recover damages for the alleged conversion by the defendants of the personal property included in a miniature golf course. The case was heard in the superior court by a justice thereof sitting with a jury and resulted in a verdict for the plaintiff in the sum of $484. The defendants' motion for a new trial was heard and denied. The defendants thereupon prosecuted their bill of exceptions to this court, containing exceptions to rulings made by the trial justice during the trial, to portions of the charge to the jury, and to the denial of the motion for a new trial.

The plaintiff's declaration is in the usual form. To this declaration the defendants filed a plea of the general issue and also a special plea of distraint for rent.

The evidence discloses that Arlan E. Winslow, a son of the plaintiff, entered into an agreement on August 10, 1930 with the Haunch Realty Company to purchase three lots of land in the city of Warwick on the basis of monthly payments, and that thereafter Arlan constructed on this land a miniature golf course, consisting of a small building on cement piers and of the equipment incident to such a course. In using the term "golf course" hereafter, we mean the personal property included in the miniature golf course and which is the subject of this action.

By virtue of an execution issued against Arlan E. Winslow, the golf course, including the building, was sold by the sheriff at an execution sale on February 13, 1931, to this plaintiff for $399.96. The uncontradicted evidence is that the plaintiff purchased the golf course in her own right. In May 1931 the golf course was renovated at her direction and with her money at a cost of some $800 for the building and of about $1400 for the other equipment.

The tract of land, of which the three lots were a part, was shortly thereafter bid in at a mortgagee's sale on June 26,

1931, by these defendants. The mortgagee's deed to them, which was recorded on August 4, 1931, only describes the land without making reference to any buildings or improvements thereon. There is a conflict in the testimony as to what happened at the mortgagee's sale. The plaintiff's husband testified that the building and equipment of the golf course were expressly excluded from the mortgagee's sale by the auctioneer, while the defendants testified that the auctioneer made no mention, one way or the other, of this property. However this may be, the evidence shows that in August 1931, according to the plaintiff's testimony, or in October, according to the testimony of the defendants, demand was made upon them in behalf of the plaintiff for the return of some of the personal property that formerly was part of the golf course, and that when such demand was made the defendants refused to comply therewith, claiming that they were entitled to retain possession of whatever remained of the golf course property for accrued rent. This brings us to a consideration of whether the testimony shows any evidence of a definite letting of the premises in question by the defendants to this plaintiff.

The testimony for the plaintiff unequivocally denies any such agreement. The plaintiff's son, Arlan E. Winslow, with whom alone the defendants claim to have dealt in connection with this matter, testified that a day or two after he made demand in behalf of his mother for the personal property in dispute, the defendants told him that "the property was going to stay there until there was something done about either rent or selling it." He further testified that, about a week later, he saw, in the truck of the defendant Gordon, at his place of business on Franklin street in the city of Providence, most of the lighting fixtures, wiring, cable, shades, bulbs and similar articles that had been on the golf course; that he again demanded the return of the plaintiff's property, and that Gordon refused to comply with the demand.

The testimony of the defendant Einhorn on the question of rent is that soon after he bid in the real estate at the mortgagee's sale, on June 26, 1931, he told Arlan E. Winslow "he could buy it at the same price he made with Haunch, or he could pay rent . . . if he wanted to rent it, it would be $50.00 a month." Arlan's answer, according to Einhorn was "as soon as he gets some money he would make arrangements so that I would get some money." The testimony of the other defendant, Louis Gordon, who claims to have been present when Einhorn talked to Arlan about buying the place or paying rent, was to the same effect. He further testified that when he refused to return to Arlan the lighting fixtures, wiring, and other personal property that was in his truck on Franklin street in the city of Providence, he told Arlan that "he wanted some money for that place, he (Arlan) had it long enough now." The defendants claim, according to this witness, that the plaintiff owed them rent for the months of July, August, September and October, at $50 a month, and that it was for this rent that they distrained the personal property which went to make up a part of the golf course.

It is clear from the evidence before us that the relation of landlord and tenant between the plaintiff and the defendants never came into existence in the circumstances of this case. Taking the defendants' own testimony, it showed nothing more than an offer by them to permit the plaintiff either to purchase the land on an agreement similar to the one that Arlan had with the Haunch Company, or to become a tenant at a rental of $50 a month. There is no evidence in this case from the defendants themselves, even by way of reasonable inference, that the plaintiff, or any one in her behalf, ever took advantage of this opportunity to rent the premises from the defendants and there is no direct evidence showing that the defendants ever demanded any rent from the plaintiff before the bringing of this action.

The evidence in this case did not entitle the defendants to a charge on the law of distress. But as the trial justice did give the defendants the benefit of this law, we have examined the charge of the court and find nothing prejudicial to their rights. Exception 13 is overruled.

The defendants, under their 6th and 7th exceptions, contend that it was error to allow in evidence the cost price of renovating the golf course, amounting in the aggregate to $800 for the building and $1400 for the other equipment, as evidence of value at the time of the alleged conversion. The evidence shows that, after the mortgagee's sale to the defendants, the golf course had received little care from any one, and that it was gradually disappearing through the depredations of unidentified persons or was seriously affected by the weather. What remained of the golf course consisted of lumber, fencing, wiring, cable, reflectors, electric bulbs, signs, cement pots for shrubbery, and other miscellaneous items, all of which were apparently greatly depreciated in value. In the words of the defendant Gordon even the "fairways was leaving bit by bit." He further testified that he took the items which Arlan E. Winslow saw on his truck in Providence "because I figured Mr. Winslow would get in ahead of me. I just got in ahead of him that once."

The defendants argue that the testimony of Arlan E. Winslow as to cost price was improperly admitted, first, because Arlan was not the owner and, therefore, the cost price to a third person was not the cost price contemplated in *Motton* v. *Smith,* 27 R. I. 62, and second, that there was no expert testimony as to the reasonableness of the charges for materials furnished and work done. On the first point, the evidence is uncontradicted that Arlan was authorized by his mother, this plaintiff, to buy for her all material and items necessary in renovating the golf course and that the work was done at her request under his sole supervision and paid for by her. In the circumstances of this case, the cost price testified to by Arlan was the cost price to the owner within

6

the meaning of the *Motton* case. Again, there is no evidence even tending to show that the price contracted for by Arlan and paid by the plaintiff for either labor or material was not reasonable. In the complete absence of any such evidence, and in the light of other evidence as to age, lack of repair and depreciation, expert testimony on the reasonableness of the cost price to the plaintiff was not necessary. The grounds urged by the defendants in their briefs in support of their 6th and 7th exceptions are without merit. These exceptions are overruled.

The defendants' 14th exception is to the denial of their motion for a new trial. This exception is governed by our well-known rule that the decision of the trial justice on such a motion approving a jury's verdict will not be set aside by this court unless clearly wrong. From our examination of the evidence we find no reason to disturb the decision of the trial justice denying the defendants' motion for a new trial. This exception is overruled.

The remaining exceptions briefed by the defendants are directed to immaterial matter, and are, therefore, overruled.

The defendants have included other exceptions in their bill of exceptions which they have neither briefed nor argued. These exceptions are deemed to be waived.

All of the defendants' exceptions are overruled and the case is remitted to the superior court for the entry of judgment on the verdict.

*William H. McSoley,* for plaintiff.
*Robert Brown,* for defendant.