STATE *vs.* DOMENIC H. CHRISTOFARO.

MARCH 31, 1944.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CAPOTOSTO, J. The indictment in this case charges that, on divers dates between May 17, 1937 and April 23, 1940, the defendant embezzled the sum of $5405.41 from the town of Narragansett. Appearing without counsel when arraigned on this indictment, the trial justice offered him the services of the public defender, which he declined, and entered a plea of not guilty. Later he tried his own case to the jury, which returned a verdict of guilty. After a motion for a new trial was duly filed, the defendant sought and was accorded the assistance of the public defender, who has prosecuted the present bill of exceptions to this court. The defendant presses an exception to the denial of his motion for a new trial and various other exceptions that were taken during the trial.

Defendant was the tax collector for the town of Narragansett for the year 1937, and as such it was his duty to collect the taxes assessed for that year, even though there were different tax collectors for the succeeding years. The evidence shows that his bookkeeping system consisted of two filing cabinets and a cash book; that the unpaid tax bills were filed in one cabinet and the paid tax bills in the other, the bills being transferred from the former to the latter as the taxes were paid; that the money received for taxes was entered in the cash book, and that such money was deposited in the bank shortly after it was received.

The defendant, who was otherwise employed during the day and sometimes also at night in the period covered by the indictment, left the collection of the taxes in great part to his wife and to his brother-in-law, either of whom receipted the tax bills upon payment, if requested, or received the money and laid the bills aside to be receipted by the defendant and then returned to the taxpayer. The necessary filing of whatever records the defendant kept was usually done by his wife, or by his brother-in-law or by some hired help, while the entries in the cash book were usually made by the defendant himself.

An official audit of defendant's records showed that, although he had collected and duly deposited in the bank tax collections in the total sum of $125,886.05, there was a "shortage" in his account of $3139.77. The defendant, who gave his testimony in narrative form, did not dispute the accuracy of the audit nor did he charge anyone else with any wrongdoing in connection with his accounts. His defense rested mainly on three grounds: first, that he did not appropriate any tax money to his own use; second, that the shortage was the result of honest mistakes and oversights due to the method which he had adopted in collecting the taxes; and, third, that the charge of embezzlement against him was traceable in its origin to the enmity of certain individuals, who, for personal reasons, sought to eliminate him from further political activities in the town of Narragansett. Broadly stated, his contention to us is that while the shortage charged to him might afford the town sufficient grounds for civil proceedings against him for any loss incurred by it because of the manner in which he collected the taxes, the state, by the mere proof of such shortage, has failed to show beyond a reasonable doubt that he appropriated any of the tax money to his own use.

We will first consider those exceptions of the defendant which he took during the trial and which we deem material. The eleventh exception relates to the introduction in evidence of the state's exhibit 9. A taxpayer testified that he

had paid his tax of $29.75, which with accrued interest amounted to $30.43, and produced a receipted tax bill showing such payment. He also testified that he paid this sum by money order and produced a money order receipt for $30.51. He explained that the difference in amount between the two receipts was due to a miscalculation of interest. The defendant did not object to the introduction of a letter from the town asking whether the taxpayer had paid his tax for 1937, or of the receipted tax bill, but he did object to the introduction of the money order receipt. The trial justice allowed the letter and both receipts in evidence as exhibit 9.

The defendant contends that even though the money order receipt was competent evidence, the manner in which it was introduced in evidence was prejudicial to him, because of the unwarranted interference of the trial justice. The incident is reported in the transcript before us as follows, the Mr. Pastore therein mentioned being the assistant attorney general: "Mr. Pastore: I should like to introduce this. *If there is no objection,* I should like to introduce this so-called money order receipt. *I don't press it.* Mr. Christofaro: I don't object to these, Your Honor. This money order stub I do object to. Mr. Pastore: *I don't press that.* The Court: Did you buy the money order? Witness: Yes, sir. The Court: To whom was it payable? Witness: Domenic H. Christofaro. The Court: Was that the receipt you received? Witness: Yes, sir. Mr. Pastore: *I don't press it, Your Honor.* Mr. Christofaro: There is nothing on this receipt to indicate where it went. The Court: The witness identified it. It may be introduced." (italics ours)

The money order receipt was not the best evidence of payment to the defendant and therefore was not, in the circumstances, admissible. The assistant attorney general apparently recognized this fact because, when he first offered the receipt, he stated that he would like to introduce it in evidence if there was no objection and also that he did not press such offer. When an objection was interposed, he then twice more informed the court that he did not urge that the receipt

be admitted in evidence in the face of defendant's objection; yet, notwithstanding these statements, which clearly showed his position in the matter, the court admitted the receipt in evidence. This was prejudicial error. Defendant's eleventh exception is sustained.

The twenty-first exception relates to the introduction in evidence of state's exhibit 26, which is in three parts,—a letter from the town to a taxpayer asking him if he had paid his tax for 1937 and his answer to that inquiry written thereon, a memorandum of such answer, and a pocket checkbook containing an entry indicating that a check was drawn in payment of the tax. The taxpayer testified that his tax for 1937 was paid by his son, who was in the army; that the son wrote and sent the check; that the son made the entry in the checkbook and also wrote the answer on the town's letter and made a memorandum of that answer. The answer to the town and the memorandum, which are substantially the same, are as follows: "I sent a check on June 23, 1938 to Domenic H. Christofaro, *then Town Treasurer,* in full payment of 1937 tax with interest. Amount of check was $81.46." (italics ours) The entry in the checkbook is: "No. 363—Pay to Domenic H. Christofaro—Date June 23, 1938—For Tax for Town of Narragansett—81.46."

In answer to questions by the court, the witness further testified that he must have the cancelled check, as he kept such checks for a period of five years; that he did not have it with him because he was unable to find it in the short time intervening between his being summoned as a witness and his appearance in court; that he would look for the check and that if he found it, he would turn it over to the state. He was not recalled as a witness by the state and the check was never produced. In the circumstances, the two papers and the checkbook, which were admitted as exhibit 26 over defendant's objection, clearly constituted hearsay evidence, which was prejudicial to him. Defendant's twenty-first exception is therefore sustained.

The twenty-seventh exception relates to the testimony of a taxpayer in reference to a tax payment on May 25, 1940, which date is beyond the period of the alleged embezzlement charged in the indictment. The defendant objected to the introduction in evidence of a receipt bearing that date, which the state offered in evidence in support of such testimony, on the ground that it was outside the scope of the indictment. Thereafter the transcript reads as follows: "The Court: What do you say Mr. Pastore? Mr. Pastore: May I see the indictment, please? The date of the receipt is 5/25/40, that is true. It is alleged in the indictment on divers dates between the 17th of May in the year 1937 and to wit, the 23d day of April, in the year 1940. Ordinarily, the point would be well taken, but I call to the attention of the court, if I may have the General Laws—The Court: It may be marked for identification—We will inspect it later—Confirmation and receipt marked 'State's Exhibit 38 for Identification.' Mr. Pastore: There is a special statute in connection with larceny. Mr. Christofaro: Your Honor, I feel that I would like to have a ruling, if it is possible, because I am going to ask the court to strike out from the record all the testimony he has given. The Court: The court will not grant your motion now, and I will note your exception."

In thus denying the defendant's motion substantially that the witness's testimony respecting such payment be stricken from the record, the court committed prejudicial error. While it is true, as the state argues, that the receipt was only marked for identification and did not go to the jury, the fact remains that the witness had already testified concerning such payment and receipt, which testimony the defendant sought to have stricken when it clearly appeared that the payment was beyond the scope of the indictment and no statutory authority was shown for the admission of such testimony. Defendant's twenty-seventh exception is therefore sustained.

The fortieth exception relates to a question in cross-examination by the state to defendant's wife. In her direct examination she, in substance, testified that her husband did not drink or gamble and that all expenditures for the family, which included five children during the period covered by the indictment, were made in common accord. In cross-examination she was asked: "Have you ever had your husband arrested for non-support?" She answered this question in the affirmative, apparently as the defendant interposed an objection, which the trial justice immediately overruled.

We cannot agree with the state that this ruling, even if not proper, was harmless error. If, in view of her testimony in direct examination, the state intended to test the credibility of defendant's wife as a witness, it might have fairly asked her if she ever made any complaint against her husband; but when it referred to an arrest, which involves conduct by others on a mere accusation of crime, it exceeded the bounds of fair cross-examination.

This is a criminal case and, in such a case, the presumption of defendant's innocence should not be adversely affected by the injection in evidence of extraneous matter which has no probative value on the real issue in the case. When the defendant, who preceded his wife as a witness, testified in his own behalf, no such question as the one under consideration was asked of him, for it is well established with us that only a *conviction* or *sentence* for crime may be shown in evidence to affect his credibility. G. L. 1938, chap. 537, §16. *State* v. *McGuire,* 15 R. I. 23; *State* v. *Vanasse,* 42 R. I. 278. The practical effect of the question we are now considering was to permit the state to do indirectly that which it did not do and could not do directly.

The defendant was further exposed to prejudice by the colloquy between court and counsel, in the presence and hearing of the jury, that followed the ruling in question. In the course of this colloquy the assistant attorney general said that as the defendant had sought "to paint himself an angel" through his wife's testimony, the state could "go a

step further and say, how about playing around with other women, if that is the case." At this point the record reads as follows: "Mr. Christofaro: I object. Now he is making a statement. The State has presented its case, and now he comes in with something about running out with other women. There has been absolutely no evidence of that. The Court: Objection sustained. Get down to something else."

There is no warrant whatever in the record before us for the insinuation by the state that the defendant might have been "playing around with other women." The defendant, a layman who was trying his own case, firmly protested against this statement under an objection, when, technically speaking, he should have moved that the statement be stricken from the record; that the jury be instructed to disregard it; and that the state be admonished against making any statement that was not supported by evidence. But, everything considered, defendant's language was, in substance, just such a motion. The statement in question tended to prejudice the defendant with the jury, and this tendency was not removed by the court merely sustaining defendant's objection to such statement. In our judgment, this objectionable matter, which remained in the record, tended to increase whatever prejudice may have come to the defendant by the allowance of the question to his wife that we have already considered. The fortieth exception is sustained.

In view of our conclusions hereinbefore expressed, we need not consider defendant's other exceptions.

The defendant's eleventh, twenty-first, twenty-seventh and fortieth exceptions are sustained, and the case is remitted to the superior court for a new trial.

*John H. Nolan,* Attorney General, *John O. Pastore,* Assistant Attorney General, *John J. Cooney,* for State.

*Benjamin Cianciarulo,* Public Defender, *Aram A. Arabian,* for defendant.