STATE *vs.* GUISEPPE ESPOSITO *et al.*

JULY 3, 1947.

PRESENT: Flynn, C. J., Moss, Baker and Condon, JJ.

CONDON, J. This is an indictment for larceny charging Guiseppe Esposito, alias Dr. Carlo Labriolo, and John Testa,

alias Louie, alias Louis Palmieri, with stealing $15,100 in the town of Johnston in this state, from Joseph Tutalo of that town. Defendant Esposito was tried alone in the superior court and convicted. The trial justice approved the verdict and denied defendant's motion for a new trial.

The case is here on his bill of exceptions containing sixty-five exceptions, but most of them have been expressly waived and many others having been neither briefed nor argued are deemed to be waived. *Winslow* v. *Einhorn*, 62 R. I. 1. Defendant has briefed the remaining exceptions under two headings: First, those to rulings of the trial justice admitting certain evidence during the trial; and, second, one exception to a portion of the trial justice's charge to the jury. Those exceptions will be considered in that order.

The evidence is uncontradicted that, on January 16, 1945 in the town of Johnston, two men stole from Joseph Tutalo the sum of $15,100 consisting of one hundred fifty-one $100 bills. The two men were then known to Tutalo as Louie from Boston and Dr. Carlo Labriolo. The latter was afterwards identified as the defendant, Esposito. The theft was committed by means of a fraudulent scheme or device which was fully described to the jury, but which we need not describe here. That the crime charged in the indictment was proved beyond a reasonable doubt is not open to question. The actual controversy at the trial was whether the defendant was one of the two men who committed the crime. The defendant denied on the witness stand any knowledge of or complicity in the crime and testified that he was not in Providence or Johnston in January, 1945; that he did not know Tutalo; and that he had never met him until he, the defendant, was arrested in New York. He also testified that he did not know John Testa, alias Louie from Boston. It is on this question of identity and on the question whether defendant was present at the commission of the crime that his exceptions more or less directly bear. He claims that, on those questions, his case was definitely prejudiced in the eyes of the jury as a result of the rulings of the trial justice

admitting certain evidence and as a result of a portion of his charge to the jury. Besides himself, no witness testified in defendant's behalf as to where he was on January 16, 1945.

Tutalo testified that he became acquainted with Louie from Boston some time in November or December, 1944 through a mutual friend; that he saw him frequently thereafter at Tutalo's cafe in Providence; and that Louie told him of a certain Dr. Carlo Labriolo who could make him rich. Finally, about January 10, 1945, Louie told him that Labriolo had arrived in Providence and was staying at the Crown Hotel. He and Tutalo went to the hotel on that day and found Labriolo in room 225. Louie introduced Tutalo to Labriolo and thereafter on the same day Louie and Labriolo went with Tutalo to his home in Johnston. Every day thereafter down to and including January 16, 1945 Tutalo met Labriolo and Louie in Johnston. As a result of those meetings they devised and executed the scheme by means of which they stole Tutalo's money on that date and concealed their theft from him until after noon of the following day, January 17, 1945.

Tutalo testified further that, when he discovered the theft, he reported it immediately to the police of Johnston. Several days later he went to New York where he met Sergeant Kenny and Corporal Casey of the Rhode Island state police, and Alfred Franco of the Johnston police, who were investigating the crime. At the New York central police station he was confronted with the defendant and he immediately identified him as Labriolo. Tutalo also testified that he met the defendant several days later in a restaurant on Broome street, New York, across from the defendant's home, at which meeting defendant promised that if he, Tutalo, would not testify against him in New York he would get back some of his money.

Tutalo, according to his testimony, later received $4500, but not from the defendant and he did not go to New York to testify against the defendant, although he was called several times by the New York police to do so. After the de-

fendant was extradited to this state for trial, Tutalo returned the $4500 to the person who gave it to him. When the attorney general asked "To whom did you return it?" defendant promptly objected and his objection was sustained. In this connection it also appears from Tutalo's testimony that after he had positively identified defendant and had conferred with him in the restaurant on Broome street Tutalo later, in Providence, made an affidavit substantially to the effect that he was not sure that Guiseppe Esposito was the man who "swindled" him. The affidavit was offered by the state and without objection was admitted in evidence. On the witness stand, Tutalo then denied that the affidavit was true and further testified, over defendant's objection, that the reason he made the affidavit was: "They wanted me to go to New York and get on the stand and say that he wasn't the man. Well I told them I never do that if they gave me all the money back, so the best thing I can do is, 'Well will you write out a letter it isn't the man and give it to the lawyer.' They told me what to do and I did it." He later got the affidavit from his lawyer and gave it to officer Franco of the Johnston police.

Maria Tutalo, wife of Joseph Tutalo, testified that she saw two men come into the yard of her home in Johnston with her husband every day for a week before the 15th or 16th of January, 1945. She identified defendant at the trial table as one of those men.

John Zielinski, an employee of Tutalo at his cafe when he first met the two men, testified that he saw the defendant "in front of the cafe in Joe Tutalo's car" on "The day before Joe reported the money was gone." He identified defendant sitting in the courtroom as the man whom he saw in the car.

David Minicucci, Tutalo's brother-in-law, testified that he had seen the defendant in the Tutalo yard in Johnston twice, the first time while he, Minicucci, was shoveling snow outside Tutalo's house on January 15, 1945, and the second time on January 16, 1945, from the sun parlor of Tutalo's

home. He further testified that each time there was another man with defendant and that they came with Tutalo in his car. He also identified defendant in the courtroom as one of the two men whom he saw on those occasions.

Catherine Carty, a maid at the Crown Hotel, testified that she took care of room 225 at the hotel and that she saw defendant there "practically every day for a minute or two" between January 9 and 16, 1945. She further testified that the room was not occupied on the night of January 16. From the witness stand she identified defendant as the man who had occupied room 225, and she also testified that she had previously identified him at the Lincoln barracks of the state police about two months before the trial.

During the trial two photographs were admitted in evidence over defendant's objections. One purported to be the photograph of Louie from Boston, alias John Testa, and was marked state's exhibit 2; the other purported to be Carlo Labriolo, alias Guiseppe Esposito, and was marked state's exhibit 8. Each photograph was shown to Tutalo while he was on the witness stand and he testified that exhibit 2 was a photograph of the man whom he knew as Louie from Boston and that exhibit 8 was a photograph of the man he was introduced to at the Crown Hotel in Providence as Dr. Carlo Labriolo. Those photographs came from the files of the United States secret service headquarters in New York City where Tutalo had picked them out while he was in that city assisting the Rhode Island state police and the Johnston police in their investigation.

█ Defendant excepted to the admission of the photograph of Louie, alias John Testa, and to allowing certain witnesses to testify as to whose photograph it was. The grounds of those exceptions were substantially that, inasmuch as Testa was not on trial, such evidence was irrelevant, and also that the photograph had not previously been properly authenticated as a correct and true representation of the subject. The general rule is that photographs must have a testimonial sponsor before they can become evidence. 3

Wigmore on Evidence (3d ed.) §793. But it is not necessary that the correctness of the photograph be proved either by an expert witness or by the person who actually took and developed the film. *Adamczuk* v. *Holloway,* 338 Pa. 263; *Roosevelt Hospital* v. *New York El. R. Co.,* 21 N. Y. Supp. 205; *Nies* v. *Broadhead,* 75 Hun. 255; *Considine* v. *United States,* 112 Fed. 342. A person who knows the subject of the photograph can testify as to whether it is a true likeness. *Considine* v. *United States, supra; Wilcox* v. *Wilcox,* 46 Hun. 32. See also Scott Photo. Evid., §652, and Underhill's Crim. Evid. (4th ed.) 162, §118.

██ In the case at bar, before the photograph of Testa was admitted as an exhibit, Tutalo, who knew Testa as Louie from Boston, testified that it was a good likeness of that person. In our opinion this was a sufficient authentication of the photograph in the circumstances for which it was offered, namely, to prove the identity of the person who was a confederate of the defendant in the commission of the alleged crime. *United States* v. *A Lot of Jewelry, Etc.,* 59 Fed. 684. And the fact that he was alleged to be such a confederate was sufficient to warrant the introduction of testimony concerning him, in order to link him with the defendant. See *Commonwealth* v. *Connors,* 156 Pa. 147. Defendant's exceptions 1, 2, 4, 5 and 6 relating to such photograph are, therefore, overruled.

██ Defendant's exception 13 to the admission of the photograph of defendant as an exhibit is lacking in merit for the same reasons as given above, and also because defendant later on in the trial admitted on cross-examination that the photograph was a picture of himself. But even if it were erroneous to admit that photograph, such error would not have been prejudicial, as the only purpose in placing the picture in evidence was to prove that the defendant was the Carlo Labriolo who had committed the larceny in Johnston, which purpose was proved, independently of the photograph, by Tutalo, Mrs. Tutalo, Zielinski, Minicucci, and Catherine Carty. The photograph was thus not essen-

tial to the proof of such identity and added little if any weight to that proof.

■ The testimony of Tutalo concerning the payment of the $4500 was objected to because it did not connect the defendant with such payment. We think that there was a connection with the defendant in this matter, at least by inference. Tutalo had previously testified that he had conferred with defendant who promised to pay him some of the money if he, Tutalo, would not testify against him in New York and that he, Tutalo, did not so testify. If the jury believed that testimony, it would furnish the foundation for a reasonable inference that the $4500 was paid by someone on behalf of the defendant. And such an inference would receive some confirmation from the action of the defendant in objecting to Tutalo answering the attorney general's question: "To whom did you return it?" that is, the $4500. Thus the situation here is wholly unlike the one condemned in *State* v. *Christofaro,* 70 R. I. 57, which case was cited by defendant in support of such exception. Defendant's exception 18 to the denial of his motion to strike out all the testimony pertaining to the $4500 is, therefore, overruled.

For much the same reason defendant objected to Tutalo being asked at whose request he had signed the affidavit hereinbefore referred to. Likewise in this matter we think that the jury could have reasonably inferred from Tutalo's testimony about the subject of his conference with defendant at the restaurant on Broome street and the other circumstances that the affidavit was procured by someone at the instigation of the defendant and, therefore, it was relevant and material to inquire at whose request Tutalo made the affidavit. Defendant's exception 19 to that question is, therefore, without merit.

■ Defendant objected to the state being allowed to ask Tutalo: "For what reason did you make an affidavit that you knew was untrue?" Here again, in view of Tutalo's testimony about his conference with defendant, we think

that the inquiry was proper in order to show that what Tutalo did in that connection was pursuant to some agreement or understanding which he had with defendant as a result of that conference. This was not in any sense an attempt by the state to impeach its own witness and to contradict him, as contended by defendant, but was simply affording a fair opportunity to the witness to offer, if he could, a legitimate explanation of a statement made by him out of court prior to the trial, which statement was inconsistent with his testimony on the witness stand, but which he was entitled to reconcile if he could. Whatever the weight of such testimony with the jury, there is, in our opinion, no question as to its admissibility. Underhill's Crim. Evid. (4th ed.) 868, §425. Defendant's exceptions 20 and 21 to the admission of that testimony are, therefore, overruled.

The registration blank and billhead of the Crown Hotel pertaining to the registration and the account of Carlo Labriolo for room 225, after being authenticated by the testimony of the assistant manager of the hotel in charge of such records, of the night auditor and room clerk who made part of the record, and of another room clerk who made the other part of the record and who testified that the signature at the place where Labriolo's name appeared was done by "The fellow that registers", were admitted together as an exhibit over defendant's objection. The ground of that objection was that no one testified that he had seen Labriolo sign his name in the place on the blank referred to in night clerk Callahan's testimony.

The attorney general argued that such testimony submitted to an inference that Callahan had seen Labriolo sign the registration blank. We are inclined to agree that if all of Callahan's testimony about the mechanical details of registering a guest is considered, it may be reasonably inferred therefrom that Labriolo signed the blank; but be that as it may we think that the record was properly admitted for another reason. Before the testimony as to that record went in, Catherine Carty, the maid who had the care

of room 225, had already testified that the defendant had occupied that room from January 9 to January 16, 1945. At the state police headquarters in Lincoln before the trial, she had identified the defendant as Labriolo who so occupied that room, and at the trial she again, from the witness stand, identified him. Thus the only purpose for which the hotel record was sought to be admitted, namely, to identify defendant as the person who occupied that room between the above dates under the name of Labriolo was, in our opinion, definitely accomplished by Miss Carty's positive testimony. Hence, even if the admission of the record were erroneous, it would be harmless error. Defendant's exception 39 to the admission of that record is, therefore, overruled.

All of defendant's other exceptions to the admission of evidence are entirely lacking in merit and need not be discussed.

There remains for consideration only exception 64 to the following portion of the charge, which was given to the jury upon their return from the jury room after they had been fully charged originally and had retired to deliberate upon their verdict: "A question occurs to me, while the defendant said he was not in Providence did he tell you where he was in January of 1945. He has told you he was in business, I think he said he had a partner, and he has a wife and has a family. I think it is fair for you to ask yourselves, are there people reasonably available who could come into Court and testify as to the whereabouts of the defendant in January, particularly on January 16, 1945, if he were not here in Providence or at Johnston."

Defendant contends that this additional charge was erroneous because it tended to place upon him the burden of proving that he was not in Providence or Johnston on the day of the crime. If that was its effect on the minds of the jury there would be no question that the charge was prejudicial. We recently held that where it was clear that the tendency of a trial justice's charge was to place upon the defendant, under a plea of not guilty, the burden of proving any essential element of the offense charged against

him, the trial justice committed reversible error. *State* v. *Blood*, 68 R. I. 160. In a criminal case not involving an affirmative defense, the presumption of defendant's innocence accompanies him throughout the trial into the jury room and until the state proves him guilty beyond a reasonable doubt of every element of the offense with which he is charged.

■ In the case at bar, the trial justice, at the very outset of his main charge, clearly and forcibly instructed the jury to that effect. Unless his additional or supplemental charge neutralized that first instruction so as to confuse the jury as to what was the correct rule of law, there can be no question that they were properly instructed. We are of the opinion that if the additional charge is read in its entirety and not merely the portion objected to, apart from its context, it will appear that the trial justice was merely suggesting to the jury a method by which they might weigh the evidence bearing on the question of the identity of the defendant with Labriolo and whether or not he was present at the scene of the crime in Johnston on January 16, 1945. It thus appears that he was not instructing them in a rule of law on the burden of proof, but was pointing out to them a way in which they might determine what was the credible evidence on those issues. On the whole we are of the opinion that the jury could not reasonably have been misled or confused by the additional charge as to what was the duty of the state in the premises, and that the trial justice did not err, as did the justice who presided in *State* v. *Blood*, *supra*. Defendant's exception 64 to the charge is, therefore, overruled.

Defendant has neither briefed nor argued his exception to the denial of his motion for a new trial. Hence, in accordance with our well-established rule, hereinbefore referred to, that exception is deemed to be waived.

All of the defendant's exceptions are overruled, and the case is remitted to the superior court for further proceedings.

Moss, J., did not participate in the decision.

On Motion for Reargument.

AUGUST 1, 1947.

Per Curiam. After our opinion in the above-entitled case was filed, defendant, by leave of court, filed a motion for reargument. This motion is based substantially on the ground that the trial justice's charge to the jury, in effect, required defendant, in violation of his constitutional rights, to give evidence against himself.

We have carefully considered the motion and the reasons advanced in its support, and we are of the opinion that no cause has been shown which would justify the granting of a reargument. The issue raised by the motion is not new. It was presented in somewhat slightly different phraseology in the original hearing and was considered and disposed of in our opinion. We reaffirm what we held therein. In our judgment no constitutional or other rights of the defendant were violated by the trial justice's charge.

Motion denied.