[Crim. No. 7836.   Second Dist., Div. Two.   Jan. 8, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. FRED WIL-
LIAM MURRAY et al., Defendants and Appellants.

Sam Bubrick for Defendants and Appellants.

Stanley Mosk, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Plaintiff and Respondent.

FOX, P. J.—Appellants were convicted of the possession of heroin in violation of section 11500, Health and Safety Code. They have appealed from the judgments and from the orders denying their motions for a new trial.

During a period of some three or four weeks prior to the arrest of the defendants, Officer Gerson, of the Los Angeles Police Department, received a series of telephone calls from a person with a feminine voice, giving him certain information concerning Hernandez. She gave him a description and the license number of his car, and told the officer where Hernandez would be on several occasions, and that he was peddling heroin throughout the Venice area. She furnished the officer with information on his associates and several addresses where he had lived. Through investigation the officer verified the addresses, the description and license number of the car, and the people with whom he was associating.

At approximately 6 :20 p. m. on November 19, 1960, Officer Gerson received another telephone call from this person stating that she had information that Hernandez would be at 15½ Avenue 53, Los Angeles, that evening, and that he had some heroin he was going to deliver to a couple that lived there. At about 10 :50 that evening the officer observed Hernandez' car parked two blocks from the above address. The officer went to the house and knocked on the door. Appellant Fred William Murray answered the door, and upon the officer showing him his badge and stating that he was a police officer, invited him to ''come in.'' When he entered the front room the officer observed Hernandez seated on a sofa, jump up and move approximately 8 inches and make ''a furtive motion.'' The officer immediately went to where he was seated and searched under the seat cushion and found a bindle containing heroin some 12 to 14 inches to the right of where Hernandez was seated. He thereupon placed Hernandez and Mr. and Mrs. Murray under arrest. He then proceeded to search the apartment. In the bathroom he found a hypodermic needle, spoon, an eye-dropper, and six capsules, one of which was full of a white-grayish powder that proved to be heroin.

Mr. Murray asked the officer what he found in the bathroom. The officer enumerated the items he found there. Murray commented: ''That is right.'' He inquired of the officer the location where he discovered these items. The officer replied: ''In a pot by the bathtub,'' to which Mr. Murray replied: ''That is right.'' Mr. Murray was then searched and an eye-dropper was found in his pocket. The officer examined the arms of both Mr. and Mrs. Murray and discovered what appeared to be several needle marks by the vein on the upper right arm of Mrs. Murray, and on the lower right and left arms of Mr. Murray.

Hernandez' motion under section 995, to dismiss the information as to him, was granted.

Appellants' basic contention in seeking a reversal is that the contraband discovered in their apartment by the officer was the product of an unlawful search. The record, however, does not support their position, for it shows that the officer had reasonable cause to make the search. Reasonable cause has been generally defined to be "such a state of facts as would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime. [Citations.]" (*People* v. *Ingle,* 53 Cal.2d 407, 412 [348 P.2d 577].) The evidence indicates that Officer Gerson's suspicions were reasonably aroused due to the telephone calls from an anonymous person providing him with information about Hernandez and his associates, and that he was peddling heroin in the Venice area. These suspicions were accentuated by another call from this person on the evening of November 19th, stating that Hernandez would be at a particular address that evening and was going there for the purpose of delivering heroin to a couple who lived there. When police officers have suspicions concerning criminal activities it is proper for them "to seek interviews with suspects or witnesses or to call upon them at their homes for such purpose." (*People* v. *Michael,* 45 Cal.2d 751, 754 [290 P.2d 852] ; *People* v. *Martin,* 45 Cal.2d 755, 761 [290 P.2d 855] ; *People* v. *Fields,* 167 Cal.App.2d 773, 776 [334 P.2d 1001].) Officer Gerson was reasonably seeking interviews with suspects and was calling upon them at their home for that purpose. He was given express consent to enter appellants' apartment. When he entered the apartment he was in possession of considerable information regarding Hernandez and his activities, which had been verified insofar as this was possible. When he entered the front room he observed Hernandez, who was seated on the sofa, jump up and move a short distance and make "a furtive motion." The officer's observance of Hernandez' furtive conduct, together with the information which he had previously received concerning his associates and narcotic activities, and that he was to be at this particular place that evening for the purpose of delivering heroin to the couple who lived there, were sufficient to lead a man of ordinary care and prudence "to believe and conscientiously entertain an honest and strong suspicion" that Hernandez was then and there engaged in violating the law with respect to contraband. The officer therefore had reason-

able cause to search the immediate area around Hernandez. (*People* v. *Ingle, supra*; *People* v. *Amado*, 167 Cal.App.2d 345, 347 [334 P.2d 254].) The result of this search was the basis for the arrest of the appellants, since the contraband was found in the apartment in which they had been living for several months.

Appellants' argument proceeds on the assumption that Hernandez did nothing more than jump up, because on cross-examination the officer said all Hernandez did was jump up when he entered the room. However, it should be noted that the officer had testified on direct that Hernandez made "a furtive motion." It was for the trial judge to resolve this seeming inconsistency. In making this resolution the trial judge was at liberty to believe a portion of the testimony of the witness and disbelieve the remainder. (*People* v. *Thomas*, 103 Cal.App.2d 669, 672 [229 P.2d 836]; *People* v. *Morris*, 115 Cal.App.2d 312, 316 [252 P.2d 36].) On appeal that portion of the evidence which supports the judgment must be accepted, not the portion which would defeat the judgment. (*People* v. *Thomas, supra*.) Applying these principles, it is apparent that the trial judge accepted the officer's initial testimony as being an accurate statement of Hernandez' actions when he entered the front room.

The fact that there was no arrest before the search is not material here, since a search may be justified, as it was here, even though it is in no way related to an arrest. (*People* v. *Ball*, 162 Cal.App.2d 465, 467 [328 P.2d 276]; *People* v. *Murphy*, 173 Cal.App.2d 367, 378-379 [343 P.2d 273].)

Appellants argue that the dismissal of Hernandez under section 995 of the Penal Code is tantamount to a finding that there was no furtive conduct on his part. The decision, however, on Hernandez' motion does not necessarily mean that the court found "no furtive conduct on his part," and that ruling does not exonerate the appellants.

Appellant Linda Lee Murray makes the additional argument that the evidence is not sufficient to support her conviction. The record, however, does not bear out her contention.

The offense of unlawful possession of narcotics consists of two elements: (1) physical or constructive possession; and (2) knowledge of the character of the substance and the unlawfulness of its possession. (*People* v. *Holloway*, 177 Cal. App.2d 287, 292 [2 Cal.Rptr. 48].) The essential elements may be established by circumstantial evidence and reasonable inferences that may be drawn therefrom. (*People*

v. *Robarge,* 151 Cal.App.2d 660, 668 [312 P.2d 70].) The narcotics need not have been found on the person of the defendant, it being sufficient if the contraband is located in a place under the possession and control of the accused. (*People* v. *Valenzuela,* 174 Cal.App.2d 759, 762 [345 P.2d 270]; *People* v. *Stanford,* 176 Cal.App.2d 388, 390 [1 Cal. Rptr. 425]; *People* v. *Hurst,* 183 Cal.App.2d 379, 387 [6 Cal. Rptr. 483].) ▮ Furthermore, the fact that Mr. Murray had an ''equal right and facility of access to the premises does not negative a finding of joint possession and control.'' (*People* v. *Valenzuela, supra.*)

▮ Applying the principles of the foregoing authorities, it is plain that the evidence amply justified an implied finding that Mrs. Murray had constructive possession of the contraband found in their apartment. That Mrs. Murray was aware that the powder in the bindle and in the capsule was heroin may reasonably be inferred from the fact that a hypodermic needle, spoon and eye-dropper, all paraphernalia generally used to administer narcotics, was found in the apartment (*People* v. *Lepur,* 175 Cal.App.2d 798, 801 [346 P.2d 914]) and from the further fact that needle marks were found on her upper right arm by the vein. (*People* v. *Hancock,* 156 Cal.App.2d 305, 312 [319 P.2d 731].)

▮ Finally, it is a reasonable inference that one who possesses heroin and who is an apparent user would know that it was unlawful to possess the contraband.

The trial court impliedly found that Mrs. Murray had possession of the substance knowing that it was a narcotic, and that the possession was unlawful. There is ample evidence to support this determination.

. The judgment and the order denying a new trial are affirmed as to each appellant.

Ashburn, J., and Herndon, J., concurred.