STATE

v.

Edward **ALGER.**

87–253–C.A.

Supreme Court of Rhode Island.

Aug. 18, 1988.

James E. O'Neil, Atty. Gen., Thomas Dickinson, Caroline Cole Cornwell, Asst. Attys. Gen., for plaintiff.

Robert B. Mann, Providence, for defendant.

## OPINION

WEISBERGER, Justice.

This case is before us on the defendant's appeal from judgments of conviction on one count of assault, with intent to commit sexual assault and one count of simple assault entered in the Superior Court following a jury trial. We affirm. The facts insofar as pertinent to this appeal are as follows.

The defendant, Edward Alger (Alger), was the owner of a three-unit apartment building located on Colonial Avenue in the city of Warwick. Among the tenants in that building was Dawn Stephenson (Dawn), who occupied the second-floor apartment with her one-and-a-half-year-old son and her roommate, Raymond LeFrancois. Apparently only three people had access to that apartment; Dawn, her roommate, and Alger. In addition, Thomas Azulay (Azulay), the brother-in-law of two of Dawn's siblings, would stay at the apartment from time to time, although he did not have a key to the premises. Azulay testified that he had met Alger through Dawn in October 1986, the month of the alleged offenses.

Dawn testified that on the morning of October 4, 1986, she awoke at approximately 9:30 a.m. to find Alger sitting on top of her thighs with a knee on either side of her legs. According to Dawn, Alger had not been invited into her apartment and he did not have her permission to be there. Dawn further testified that while facing her, Alger pulled his penis out of his pants and attempted to have her participate in oral sex with him. According to Dawn, Alger continuously repeated the words "you want it, you know you want it." Although Dawn persistently resisted, Alger succeeded in touching his penis to Dawn's mouth. He then hit her in the vaginal area with his hand. At that point, Dawn, who had been sleeping in a sweatsuit, jumped up, grabbed her sneakers, and ran out the door. Dawn testified that she did not immediately report the incident to the police because she was afraid that she would lose her apartment, which was within walking distance to her job.

Dawn further testified that she worked as manager of a local restaurant. She stated that while working on October 16, 1986, at approximately 10:20 p.m., Alger came into the restaurant and ordered some food. Dawn testified that as she was serving him, Alger pinched her breast. Dawn indicated to Alger that she did not consider his action funny. At that point, Alger told Dawn that he would "come over and wake [her] up the same way [he woke her up] before."

As Alger was leaving the restaurant, Dawn asked whether he had an apartment available for her sister. Alger once again touched her on the breast, stating "I'll come over tomorrow and I'll do all the talking while your mouth will be full doing —doing sucking." When Alger left, Dawn immediately called the police.

The only other person in the restaurant at the time of the alleged assault was Gary LeFrancois (Gary), a fellow worker and the brother of Dawn's roommate. Gary testified that he overheard Alger tell Dawn that "he'd be waking her up the same way he had before." Gary also testified that as Alger was leaving the restaurant, he saw Alger reach for Dawn's breast, although he did not hear the words that accompanied Alger's gesture.

Detective Jeffrey McKnight, a Warwick police officer, testifed that he and his partner were dispatched to the restaurant at about 10:23 p.m. on October 16, 1986, on the report of an assault that had taken place there. According to Detective McKnight, when he and two other officers

entered the restaurant, the only two persons present were Dawn Stephenson and Gary LeFrancois. Detective McKnight further stated that he had Dawn lock the door to the restaurant so that the investigation could proceed without disturbance. Detective McKnight and the other two officers left the restaurant at approximately 11:45 p.m.

Denise Stephenson, Dawn's sister (Denise), testified that a short time after the incident, she was visiting her sister in the restaurant when Alger came in. Denise stated that she asked Dawn whether Alger was the man who had hurt her. According to Denise, Alger heard the question and volunteered, "[Y]es * * * I didn't mean to hurt her or anything. I was drinking."

After the state rested its case, defense counsel made an offer of proof that its witness, Thomas Azulay, would testify as follows:

> "[T]hat on the night of October 16th, he was at Pete & Bob's New York Restaurant in the presence of Dawn Stephenson and Edward Alger, that he suggested to Dawn Stephenson as part of a continuing conversation joking about sex, that they engage in a, what is called a ménage à trois, that the three of them, Dawn Stephenson, Edward Alger and Thomas Azulay engage in sex that night; that Dawn Stephenson consented, that Edward Alger did not consent; that it [the ménage à trois] never happened."

In support of the admission of this testimony, defense counsel argued that Dawn's alleged consent to engage in a ménage à trois belied her contention that she was afraid of Alger and, accordingly, impeached her credibility.

The state argued that the proposed testimony should be excluded under Rule 26.3 of the Superior Court Rules of Criminal

Procedure[1] as evidence of Dawn's sexual conduct. The trial justice rejected the offer of proof as it related to the conversation regarding the ménage à trois, finding there was "no relevance at all established for that testimony." However, the trial justice did allow Azulay to testify regarding the times that he lived with Dawn.

The first witness presented by the defense was Stephen Hanna (Hanna), who testified that on October 4, 1980, he visited one of Alger's rental properties on Colonial Avenue for the purpose of looking at a van for possible purchase. Hanna stated that while he was looking at the van, Alger was also at the property picking up trash. Hanna testified that while he was looking at the van, he heard Dawn yell out her back window to Alger. According to Hanna, Dawn asked Alger to leave the trash and to come up to her apartment to fix an electrical problem. Hanna stated that he saw Alger enter the apartment building and then exit approximately fifteen or twenty minutes later. Hanna further stated that he never saw Dawn leave the apartment building.

Thomas Azulay testified that on the night of October 16, 1986, he twice visited the restaurant where Dawn was working. The first visit was between 9 and 9:30 p.m., at which time he stated that only Dawn and Gary were present. Azulay testified that he returned to the restaurant at approximately 1 a.m., at which time Alger also came into the restaurant. According to Azulay, he, Dawn and Alger had a joking conversation while Alger was eating his meal. It was presumably at this point that the remarks were made regarding the ménage à trois that was the subject of defense counsel's offer of proof. Azulay further testified that he left the restaurant a short time later and went to Dawn's sister's house, although he stated that he had been

---

**1.** Rule 26.3 of the Superior Court Rules of Criminal Procedure states in relevant part:

"If a defendant who is charged with the crime of rape or any other sexual offense intends to introduce proof that the complaining witness has engaged in sexual activities with other persons, he shall give notice of his intention to the court and the attorney for the state. The notice shall be given prior to the introduction of any evidence of such fact; it shall be given orally out of the hearing of spectators and, if the action is being tried by a jury, out of the hearing of the jurors. Upon receiving such notice, the court shall order the defendant to make a specific offer of the proof that he intends to introduce in support of this issue."

living with Dawn for approximately a week to a week and a half prior to that time.

The jury returned guilty verdicts on both counts. Thereafter the trial justice sentenced Alger to twelve years at the Adult Correctional Institutions (ACI) on count 1, with six years to serve, six years suspended with six years probation. On count 2 Alger was sentenced to a concurrent one-year term at the ACI.

The sole issue before this court on appeal is whether the trial justice erred in excluding the testimony presented in defense counsel's offer of proof regarding the ménage à trois.

 It is well settled in this jurisdiction that questions of relevancy are directed to the sound discretion of the trial justice. *State v. Estrada*, 537 A.2d 983, 988 (R.I. 1988); *State v. Brash*, 512 A.2d 1375, 1378 (R.I. 1986). This court will not disturb that determination on review absent a showing of prejudicial abuse of discretion. *State v. Estrada*, 537 A.2d at 988; *State v. Parente*, 460 A.2d 430, 436 (R.I. 1983).

██ This court has stated that relevant evidence is "evidence that tends to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would have been without the evidence." *State v. Wheeler*, 496 A.2d 1382, 1388 (R.I. 1985). On appeal defendant argues that the "critical question" in this case concerns Dawn's consent to engage in sexual activity. However, the excluded testimony relating to the ménage à trois could not show whether Dawn had consented to participate in sexual activity at the time of defendant's first attempted sexual assault almost two weeks earlier. Nor could the ménage à trois testimony be considered relevant to whether Dawn consented to the second assault incident, which occurred on the evening of the purported conversation. Thus, the trial justice did not abuse his discretion in rejecting Alger's offer of proof regarding the testimony of the conversation.

The defendant further argues that Azulay's testimony regarding the ménage à trois could have been introduced to impeach Dawn's trial testimony that she was afraid of defendant. On this point, defendant relies to a great extent upon our decision in *State v. Camerlin*, 116 R.I. 726, 360 A.2d 862 (1976). In *Camerlin* this court noted that it was essentially an issue of credibility between the defendant and his four accusers about who had assaulted whom in a scuffle at the Adult Correctional Institutions. The defendant took the stand and related his version of the incident that led to the assault charge filed against him. Thus, the credibility of the defendant was placed before the jury. In an effort to bolster that credibility, and to diminish that of the prosecution witness, the defendant sought to have at least five witnesses testify concerning his bloodied appearance some six to seven hours after the confrontation with the prison guards. In addition the defendant sought admission of a picture that showed his bloodied appearance following the confrontation. The trial justice refused to allow introduction of either the testimony or the picture, reasoning that neither was relevant to the assault charges pending against the defendant. On appeal, this court found that the evidence should have been admitted insofar as

> "[t]his evidence, while not contradictory of the prosecution's testimony about the altercation, surely would have provided a starting point for a closing argument by defense counsel that the state's witnesses, whose testimony had minimized defendant's injuries to a point where it was reasonable to believe that it lacked credibility, could also have fashioned out of something less than whole cloth their testimony of what occurred in the altercation between defendant and [the officer]." *State v. Camerlin*, 116 R.I. at 730, 360 A.2d at 865.

In the case at bar defendant did not testify about his version of the encounters with Dawn. Alger relied instead upon cross-examination of the prosecution witnesses and presented three witnesses of his own. As in *Camerlin* the credibility of the complainant was the issue to which the disallowed evidence related. In *Camerlin*, however, the defendant was not allowed to present a substantial amount of evidence

**508**

that would have bolstered his theory of the case. In the instant case, however, the record indicates that defendant was able to present his witnesses and have their testimony fully heard with the exception of a purported joking conversation regarding the ménage à trois. A review of the record reveals no lack of basis for a challenge to Dawn's credibility. Counsel for the defense fully explored her credibility in his cross-examination of the state's witnesses, in his presentation of the defense witnesses, and in his closing argument. Moreover, the testimony as given by the various witnesses presented clearly to the jury that Dawn had no particular personal fear of defendant following the first incident in which she found him in her bed upon awakening. Regarding her reasons for not reporting that incident to the police, Dawn testified:

> "Because I was afraid because I had my job, I had my son, and I had no other place to live, and because I was afraid of Eddie. And, I was afraid that if I had made a complaint, that I would be thrown out of my apartment and which I was threatened to be thrown out once I did finally make a complaint, and I had to think about my son and everything."

Regarding her reasons for finally reporting the incidents to the police after the second incident, Dawn testified: "Because like I said, when it happened the first time, I was afraid because I had a lot at stake and I'm not a rich person and—I work every day, I try to support my kid, but I knew, I knew I wasn't going to let it happen again, so I called the police."

■ Thus, the jury heard from Dawn directly that her fear was based upon a possible loss of her apartment and/or job. A review of the record leaves little doubt that defendant was able to show lack of fear on the part of Dawn not only through Dawn's testimony but also through the testimony of the various defense and prosecution witnesses. Therefore, we do not believe that the trial justice erred in determining that the relevancy of the ménage à trois conversation had not been established. Accordingly, we are of the opinion that the testimony relating to the conversation regarding the ménage à trois was not improperly excluded. We believe that this conclusion is not inconsistent with our decision in *Camerlin*. The question of relevancy is dependent upon the factual circumstances in each case. The facts in *Camerlin* were quite different from those in the case at bar and bear little precedential effect upon the issue currently presented.

■ The defendant raises for the first time on appeal the issue of whether the prosecutor, in her closing argument, made improper remarks to the jury. The defendant, in his brief, concedes that no objection to these purported improper remarks was made at trial. We have recently reaffirmed, in *State v. Estrada*, 537 A.2d 983 (R.I. 1988), our long-standing rule that a matter not presented before the trial court will not be considered on appeal. Accordingly we shall not address that issue.

For the reasons stated, the defendant's appeal is denied and dismissed. The judgment appealed from is affirmed, and the papers in the case may be remanded to the Superior Court.