**STATE**

v.

**Robert L. CLARK.**

**No. 89–75–C.A.**

Supreme Court of Rhode Island.

June 19, 1990.

James E. O'Neal, Atty. Gen., John J. Hogan, Annie Goldberg, Sp. Asst. Attys. Gen., Jeffrey Greer, Asst. Atty. Gen., for plaintiff.

Richard Casparian, Public Defender, Catherine Gibran, Barbara Hurst, Asst. Public Defenders, for defendant.

**OPINION**

SHEA, Justice.

This matter is before the Supreme Court on the defendant's appeal from his conviction in Superior Court of robbery. He was sentenced to thirty years at the Adult Cor-

rectional Institutions, ten years of which were suspended. We affirm.

On the morning of September 20, 1983, three Providence police detectives, having received a tip of a possible robbery, staked out a pharmacy owned by Norman and Rachel Cabral on Smith Street in Providence. Ms. Cabral testified at trial that the police informed her of the impending robbery and instructed her to give the robber whatever he wanted and then fall to the floor. She also testified that they told her the robber would ask for her ring.

At trial Ms. Cabral testified that at approximately 11 a.m. defendant entered the pharmacy. When she asked if she could help him, he asked for her left hand on which she wore her engagement ring. She refused, but as she stated later she became scared when she saw "something was bubbling out of his shirt * * * it looked like a gun. It was kind of pointy." She said that he then asked her for "the money" and she just gave it to him.

The three police officers each testified. The first to take the stand, Detective McCaughey, essentially corroborated Ms. Cabral's story, but stated that after Ms. Cabral hit the floor he heard a shotgun blast, emerged from his hiding place, and saw defendant running out the front door. He said that the officers pursued him, and caught him in a nearby vacant lot several minutes later.

Officer Pedchenko testified that he also was hiding behind a counter and could not directly observe the register area. He said that he heard defendant demand money but in a calm voice. He stated that he waited for a few seconds after he heard the register ring open and then jumped up with the shotgun. As he climbed over the counter, he said, defendant pushed him back into it, causing the shotgun to go off. He testified that he managed to swing the gun barrel around and hit defendant in the head before he could get out the door. Officer Pedchenko also stated that after ordering defendant to stop several times, he fired a shotgun blast at his feet which brought him to a halt. The defendant apparently dropped or threw the money away before leaving the store, and when he was searched, the detectives found neither money nor a weapon.

The defendant attempted at a pretrial hearing to compel the state to disclose the identification of the informant. During this hearing defendant modified his request and asked the court to require the state to disclose any exculpatory information the informant gave to the police. The trial justice denied the original motion and ruled that the identity of the informant need not be disclosed. He did order the state to furnish any exculpatory evidence to defendant.

After the state had rested, defendant moved for judgment of acquittal which was denied by the trial justice. Defense counsel then made his opening statement in which he stated that he intended to call as a witness Glen Guertin, the alleged informant. Counsel indicated that Guertin would testify as follows: On the morning of September 20, 1983, Guertin drove defendant to the pharmacy so that defendant could obtain money from the sales clerk. When defendant entered the pharmacy Guertin drove off leaving him to the police who were waiting as a result of Guertin's tip. He stated that the motive for Guertin setting up defendant was to avoid returning to jail.

The defendant then attempted to present Guertin as a witness, a move the state objected to on the grounds that Guertin's testimony was irrelevant unless defendant testified. The defense made an offer of proof that Guertin, an acquaintance of defendant, had told defendant that the clerk was "his lady," that Guertin did not want to be seen by her husband and that she had money for him. This testimony would support defendant's contention that he had been set up and would refute the state's assertion that he had taken the money by force and fear, thereby eliminating a necessary element of the crime of robbery. At a hearing out of the jury's presence, however, Guertin refused to confirm defendant's offer of proof. Guertin asserted his Fifth Amendment privilege in response to most of the questions. He admitted only

that he knew defendant and Detective McGurn of the Providence police. He denied having told defendant that Ms. Cabral, the sales clerk, would willingly give him the money; that he had told the detective that a robbery would take place; or that he was with defendant on the day of the robbery. He also denied having told defendant that the black-haired woman in the pharmacy was "his lady" or that he did not want to be seen by her husband.

At the close of the hearing, defense counsel asked the court either to order the state to seek immunity for Guertin, or to confer judicial immunity on him so that reliable testimony could be elicited.[1] The trial justice refused to order the state to seek immunity, giving as his reason that such action is the responsibility of the Attorney General and should not be interfered with by the court. He also declined to confer immunity himself because there is no provision in our law for such action by a trial justice. The trial justice observed that the story defendant had told his counsel was not necessarily true and that defendant himself was in the best position to testify to his own state of mind. As a result the jury did not hear any testimony in support of defendant's defense because defendant then rested. He did not at that time renew his motion for a judgment of acquittal.

On appeal defendant argues that the trial justice committed reversible error when he refused to order the disclosure of the informant's identity or the information communicated to the police. In support of his contention that disclosure was appropriate defendant argues that the informant's testimony would have established that he did not have the required mental state to commit robbery.

When determining whether disclosure of an informant's identity is appropriate, the trial court is guided by the following principles:

"[N]o fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *State v. Souza*, 425 A.2d 893, 896 (R.I.1981) (quoting *Roviaro v. United States*, 353 U.S. 53, 62, 77 S.Ct. 623, 628–29, 1 L.Ed.2d 639, 646 (1957)).

As a general rule the public interest in effective law enforcement requires that the identity of confidential government informants be withheld. *State v. Lanigan*, 528 A.2d 310, 316 (R.I.1987). The decision to compel disclosure by the state rests within the sound discretion of the trial court. *State v. Souza*, 425 A.2d at 897. In instances where the informant takes no active role in the commission of the crime, disclosure of his identity is not justified. When the informant actively participates in the crime or is present at its commission, disclosure may in some instances be appropriate. *Id.* at 896. However, regardless of the informant's involvement, defendant must demonstrate that the informer would have offered testimony helpful to the defense in order to compel disclosure. *Id.* at 897.

Assuming that defendant's version of the events of September 20, 1983 is true, Guertin would have to had at least planned the crime and would have had to have driven defendant to the scene. Although such information may weigh in favor of disclosure of the informant's identity, defendant must also establish that disclosure would yield testimony that would be of assistance at trial.

The record indicates that his offer of proof that Guertin, the purported informer, had exculpatory information was completely unsuccessful. No testimony was forthcoming that was helpful to the defense.

---

1. Although defense counsel requested the court grant "judicial immunity," the correct terminology is "transactional immunity," which affords immunity to the witness from prosecution for the offense to which his compelled testimony relates.

Guertin testified that he did not tell defendant he knew the sales clerk at the pharmacy. Guertin repeatedly invoked his Fifth Amendment privilege when questioned concerning the robbery. As the trial justice noted, only defendant could testify concerning his own state of mind when he entered the pharmacy. He did not do so. We are of the opinion that the trial justice did not abuse his discretion when he declined to order disclosure.

The defendant also claims that under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), disclosure of the informant's identity and any information he relayed to the police was required. The United States Supreme Court in *Brady* held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment * * *." *Id.* at 87, 83 S.Ct. at 1196–97, 10 L.Ed.2d at 218. We have repeatedly held that the central issue in this analysis is the "materiality" of the suppressed evidence. *See State v. Nordstrom,* 529 A.2d 107, 113 (R.I.1987); *In re Ouimette,* 115 R.I. 169, 177, 342 A.2d 250, 253 (1975).

■ On the record now before us, we are of the opinion that the state's refusal to identify the informant was not improper. The defendant did not testify as to his own state of mind. The testimony of the alleged informant was of no assistance to defendant. The contention that the state failed to provide exculpatory information as required by *Brady* is also unsupported by the record. The trial justice reminded the state of its obligation under *Brady* to disclose exculpatory evidence. The state took the position that it had no exculpatory information that would be material or helpful to the defense. There is nothing in the record to suggest that the state failed to meet its obligations under *Brady* in this case.

At a minimum, defendant claims, he should have been allowed to question the purported informer, Guertin, *in camera.* In view of the fact that the informant would have no incentive to disclose his involvement in the crime, if he was so involved, and in light of the testimony elicited in an attempt to support the offer of proof, such a hearing would have been futile.

■ The defendant next argues that the trial justice was in error when he excluded the alleged informant's testimony because it would not be relevant unless defendant testified regarding his own mental state when he entered the pharmacy. This court has held on several occasions that questions of relevancy are directed to the sound discretion of the trial justice. *State v. Alger,* 545 A.2d 504, 507 (R.I.1988); *State v. Estrada,* 537 A.2d 983, 988 (R.I.1988); *State v. Brash,* 512 A.2d 1375, 1378 (R.I. 1986). We will not disturb the trial justice's determination on review absent a showing of prejudicial abuse of discretion. *Alger,* 545 A.2d at 504.

The defendant's contention that the trial justice abused his discretion when he refused to allow Guertin to testify must fail precisely because he does not appear to have been prejudiced by the trial justice's decision. The trial justice noted that Guertin insisted that he did not accompany defendant to Norman's Pharmacy and he did not direct defendant to the clerk. This testimony if admitted at trial, would have been of no assistance to defendant. There is nothing to suggest that at trial Guertin's testimony would have differed from the testimony he had given or would have in any way buttressed defendant's contention that he did not intend to rob the pharmacy.

■ Because Guertin repeatedly invoked his Fifth Amendment privilege and thereby frustrated defendant's ability to elicit favorable testimony, defendant contends, the trial justice should have granted Guertin immunity. The mechanism by which a witness may be granted immunity is set forth in G.L.1956 (1981 Reenactment) § 12–17–15, as amended by P.L.1986, ch. 513, § 1. That statute provides in part as follows:

"Whenever a witness * * * refuses on the basis of his privilege against self-incrimination, to answer a question or to

produce other evidence of any kind, in a criminal proceeding before any court or grand jury of this state, the *attorney general* may, in writing, request the presiding justice of the superior court * * * to order the witness to answer the question or produce the evidence. The court, in its discretion, after notice to the witness may order the witness to answer the question or produce the evidence. The witness may not refuse to comply with the order on the basis of his privilege against self-incrimination * * *." (Emphasis added.)

Clearly the provisions of this statute provide that only the Attorney General may seek immunity from prosecution. In his decision from the bench the trial justice denied defendant's motion to grant transactional immunity to Guertin, reasoning that in the absence of authority granted by statute, he did not have that power. His ruling correctly reflects the current state of Rhode Island law. Until such time as the General Assembly extends this authority to trial justices or we find it necessary to confer this power on them, a trial justice may not grant immunity in a situation like the one that arose in this case. For this reason there was no error in the trial justice's denial of defendant's motion.

 Finally the defendant claims that the trial justice erred in denying his motion for judgment of acquittal. This court has consistently held that the denial of a motion for judgment of acquittal made at the close of the state's case is preserved for appeal only if the defense has rested its case at that time or renews the motion at the conclusion of the presentation of all the evidence. *State v. Colbert*, 549 A.2d 1021, 1023 (R.I.1988); *State v. Roddy*, 401 A.2d 23, 32 (R.I.1979). In this case the defendant moved for judgment of acquittal at the close of the state's case. The motion was denied. The defendant then made an opening statement which set forth his theory of the case. After the defendant unsuccessfully attempted to present Guertin's testimony to the jury he gave his closing argument. He did not renew his motion for judgment of acquittal at that time. Ac-

cordingly this issue was not preserved for appeal. It is obvious, however, that if the motion had been renewed, there was evidence before the jury that would compel denial of the motion.

For these reasons the defendant's appeal is denied and dismissed, the judgment appealed from is affirmed, and the papers of the case are remanded to the Superior Court.