STATE

v.

**Altogracia HERNANDEZ.**

No. 91–683–C.A.

Supreme Court of Rhode Island.

May 4, 1994.

Jeffrey Pine, Atty. Gen., Aaron L. Weisman, Asst. Atty. Gen., Lauren Sandler Zurier, Asst. Atty. Gen., for plaintiff.

David Cicilline, Providence, for defendant.

## OPINION

MURRAY, Justice.

The defendant, Altogracia Hernandez (Hernandez), appeals from a Superior Court jury conviction of possession of heroin with intent to deliver pursuant to G.L.1956 (1982 Reenactment) § 21–28–4.01(A)(2)(a), as amended by P.L.1988, ch. 521, § 1 and § 21–28–2.08.[1]

Hernandez was sentenced to fifteen years of imprisonment with five years to serve. In this appeal Hernandez avers that the trial justice erred by denying her motions requesting; (1) disclosure of the identity of the state's confidential informant, (2) dismissal for lack of a speedy trial, (3) passing the case, (4) judgment of acquittal, (5) a new trial, and (6) a continuance.

The only witness presented at trial was Detective Lawrence Lepore (Lepore) of the special investigation bureau of the Providence police department. The summary of his testimony is as follows. Hernandez's single-family house at 172 Melrose Street was under surveillance from August until late September 1988. After observing the residence for several days during which six to ten adults made short visits, Lepore obtained a search warrant. The affidavit to support the request for the search warrant was based upon information from his own observations and information obtained from a confidential informant. The affidavit stated that the confidential informant had purchased heroin from a "Spanish male" at the Melrose Street house.

Lepore testified that the search of the premises began in the kitchen. In a cabinet containing cooking utensils he found a brown paper bag containing a bottle of quinine and elastic bands. He explained that quinine is used in the packaging of heroin to decrease its purity and increase its volume. In this manner the seller of the heroin can increase his or her profit. Elastic bands are used to wrap packages of heroin into bundles for street distribution.

The next room Lepore searched was what he described as a "spare bedroom" with a "box spring and mattress on the floor, but basically, the room was * * * vacant." He discovered a small closet with its door ajar. On one of the closet's shelves, at eye level, he noticed two packages, both wrapped in Christmas paper and in newspaper. He immediately observed that one of the packages was ripped open, and he saw what he believed were glassine packets of heroin. Lepore testified that he observed the glassine packets before he removed the packages from the shelf. After further analysis the two packages were indeed found to contain 2,490 packets of heroin bundled in a manner conventionally used for street distribution. Lepore estimated that its on-the-street value was between $31,000 and $34,000.

Lepore also discovered $7,800 and two twelve-gauge shotguns with ammunition in a dead-bolt-locked closet in the den of the house. In the master bedroom he discovered a food-stamp voucher issued to Hernandez and a safe-deposit box key. That safe-deposit box was subsequently searched, and it contained $1,250 and two gold rings. He also discovered a briefcase in the bedroom. Lepore searched the briefcase and found Hernandez's identification card from the Dominican Republic, a utility bill issued to Hernandez at the Melrose Street location, and a quitclaim deed conveying the property to Hernandez from William F. Hernandez, her son, on January 26, 1988.

Lepore also testified that he conducted a search of the basement. It had been completely remodeled into a separate apartment, which included a kitchen, a small family room, and two bedrooms. Lepore stated that, relying upon his observations, he felt it "quite obvious that males were residing in those rooms." Lepore testified that he observed various electronic equipment throughout the house and noted that the residence had been extensively remodeled.

Hernandez first contends that the trial justice erred in denying her motion to disclose the identity of the state's confidential infor-

---

1. We note that the materials filed in this case spell defendant's first name as *Alto*gracia and *Alta*gracia. We refer to defendant as Altogracia because that is the spelling of her name on the criminal information filed. This spelling discrepancy has no effect on our holding.

mant. She avers that the only person who could testify to the heroin activity at the house was the informant. Hernandez avers that the informant is the only source of reliable, material testimony that could exculpate her. The state avers that since the informant did not play an active role in the crime with which Hernandez is charged, no helpful information would be discovered in disclosing his or her identity.

■■■ Generally the public interest in efficient law enforcement requires that the identity of confidential government informants be withheld. *State v. Clark,* 576 A.2d 1202, 1204 (R.I.1990). The decision to compel disclosure rests within the sound discretion of the trial justice. *Id.* In making that decision, the trial court must be guided by the premise that

> "no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his [or her] defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." (Emphasis added.) *State v. Souza,* 425 A.2d 893, 896 (R.I.) (quoting *Roviaro v. United States,* 353 U.S. 53, 62, 77 S. Ct. 623, 628–29, 1 L. Ed. 2d 639, 646 (1957)), *cert. denied,* 454 U.S. 840, 102 S. Ct. 148, 70 L. Ed. 2d 123 (1981).

When an informant actively participates in the commission of the crime, disclosure of the informant's identity may be appropriate. *Clark,* 576 A.2d at 1204. In occurrences in which the informant does not take an active role in the commission of the crime, disclosure is not justified. *Id.* In this instance the informant's testimony "could only be peripheral." *State v. Anil,* 417 A.2d 1367, 1371 (R.I.1980).

■■■ Hernandez was charged with possession of heroin with the intent to deliver. The confidential informant's connection to the premises was with a "Spanish male" for the purchase of heroin. That charge was not before the court. The informant merely supplied the police with information necessary to obtain a search warrant of the premises. The informant's affidavit provided the probable cause necessary to secure the search warrant. It did not contain additional evidence supporting a charge of constructive possession against Hernandez, nor did it contain information tending to exculpate her. The informant was not a witness to the crimes charged and was not present at Hernandez's arrest. We believe that the confidential informant played no active role in the crime charged and merely brought the authorities and Hernandez together. *See id.*

"That the informant witnessed prior drug transactions in the subject [premises] and could have testified that he had not seen [Hernandez] participate in them, though possible, is only of tangential relevance at best, since the fact of the matter is that" Hernandez was charged with possession with the intent to distribute on the basis of the events uncovered through the search warrant. *See United States v. Martinez,* 922 F.2d 914, 921 (1st Cir.1991). The confidential informant was a conduit of information rather than a principal or active participant in the crime charged. *Id.* The trial justice did not abuse her discretion in denying Hernandez's motion to disclose the confidential informant.

Hernandez next claims that the trial justice erred by denying her motion to dismiss because she was denied her constitutional right to a speedy trial. Hernandez contends that her right to a speedy trial was violated because she waited two years from the date of the offense to the date of the trial. The state avers that the trial justice properly balanced the required factors and was correct in denying Hernandez's motion.

■■■ A defendant's right to a speedy trial is guaranteed by article 1, section 10, of the Rhode Island Constitution and the Sixth Amendment to the United States Constitution. The test to determine whether a defendant has been denied the right to a speedy trial was enunciated in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The court must consider "(1) the length of the delay, (2) the reason for the

delay, (3) the defendant's assertion of his [or her] rights, and (4) the prejudice to the accused." *State v. Allan,* 433 A.2d 222, 224 (R.I.1981). Since a single factor alone is not a necessary or a sufficient condition for establishing a deprivation, the court must balance the factors with the circumstances of each case before reaching its decision. *Id.*

■ The record reflects that Hernandez was arrested in September 1988 and that a criminal information was filed against her in November 1988. She filed her motion for a speedy trial in December 1988, and it was granted on January 5, 1989. However, the trial did not commence until October 1990. We believe that this period is more than sufficient to trigger an inquiry into the three remaining factors of the *Barker* test. *See generally State v. Delahunt,* 121 R.I. 565, 401 A.2d 1261 (1979) (finding a delay of sixteen months sufficient to trigger inquiry into the three remaining factors). However, " '[t]he passage of time, standing alone, does not justify a holding that the guarantee to a speedy trial has been violated.' " *State v. Crescenzo,* 118 R.I. 662, 665, 375 A.2d 933, 935 (1977). The length of the delay is but one factor among the factors to be considered. *Id.*

■ Hernandez suggests that court congestion was the reason for the delay; however, the trial justice did not specifically make that determination. The trial justice did not find fault with either party, but the trial docket does reflect that twice in early September 1990 the trial was postponed at Hernandez's request. These late-in-the-game requests do not convince this court that Hernandez was the cause of the delay. If the delay was in fact due to court congestion, "only minor weight [should attach] to the state's role in * * * delay[s] caused by neutral factors such as crowded dockets * * *." *State v. Anthony,* 448 A.2d 744, 750 (R.I. 1982). Although court congestion is weighed against the state, it is not weighed so heavily as deliberate delay. *Id.*

■ As far as the remaining factors are concerned, the record reflects that Hernandez asserted her constitutional right once in the two-year period. This assertion occurred very early in the proceedings, in fact one month after the information was filed. She did not bring her motion to dismiss until the first day of trial, some twenty-two months after first asserting her right. We believe Hernandez could have been more aggressive in asserting her right. The record reflects that she only "tapped lightly" on the courthouse doors. *See generally Tate v. Howard,* 110 R.I. 641, 296 A.2d 19 (1972). We need not intricately analyze the assertion-of-right factor as we believe that our answer to the speedy-trial question depends largely upon the trial justice's finding with regard to prejudice.

■ Although conceding that she was not incarcerated pending trial, Hernandez contends that she "suffer[ed] enormous mental strain and anxiety as a result of the delay in the proceedings." However, Hernandez does not present any evidence in support of this contention. We believe that Hernandez places a misguided emphasis on an assertion of alleged mental trauma associated with having a criminal case pending against her. Although we do not trivialize the emotional distress that may be associated with a pending criminal trial, a defendant's assertion that he or she has suffered emotional trauma as a result of " 'awaiting trial for over a year is an *insufficient basis* for a claim of denial of a speedy trial.' " (Emphasis added.) *State v. Macaskill,* 523 A.2d 883, 886 (R.I. 1987).

■ Hernandez also contends that the delay caused her to lose potential witnesses who could have testified on her behalf. Yet Hernandez fails to demonstrate how the failure of the potential witnesses to come forward was linked in any way to the delay in the prosecution. We find her claim that she lost potential witnesses to be without merit. We are persuaded from the record that Hernandez did not suffer any prejudice as a result of the lack of a speedy trial; hence her defense was not impaired. Consequently, in applying and analyzing the four factors of the *Barker* test, we find that the trial justice correctly denied Hernandez's motion to dismiss for lack of a speedy trial.

Hernandez next contends that the trial justice erred by allowing the prosecution to introduce certain evidence that had been ruled inadmissible. The state maintains that the prosecutor's comments were descriptions of inferences that the jury could have drawn from the evidence and consequently did not prejudice Hernandez in any manner.

■ At trial the state introduced testimony regarding the key to the safe-deposit box. The key was found on the top of a bureau in the master bedroom alongside a food-stamp voucher issued to "A. Hernandez." During trial the state attempted to introduce the testimony of an individual responsible for maintaining the records at the bank where the safe-deposit box was located. Through this testimony the state sought to demonstrate that as a colessee of the safe-deposit box, Hernandez had access to its contents. The trial justice sustained defendant's objection to the proffered testimony, stating that the records did not indicate that defendant had utilized the safe-deposit box at a time when the $1,250 and the gold rings were placed in it.

During the state's closing argument the prosecutor stated that "[h]ere we have a woman who's on food stamps, October, '88, this was valid at that time, who's got a safety deposit box." Hernandez objected to the statement because she asserted that her ownership of the box was not established. After the prosecution finished its closing argument, Hernandez moved to pass the case. The trial justice denied Hernandez's motion, stating that the prosecutor had merely "character[ized] the evidence" and that the jurors would be instructed that the prosecutor's comments were not to be taken as evidence. The trial justice also found that the prosecutor did not intend his comments to "inflame or poison the jury." Subsequently Hernandez submitted a proposed jury instruction that she believed "attempted to cure the court's error." The trial justice refused the proposed jury instruction and gave an instruction of her own.

It is well settled that a prosecutor is allowed wide latitude in arguing the state's case. *State v. Conway*, 463 A.2d 1319, 1324 (R.I.1983). The decision to declare a mistrial is within the sound discretion of a trial justice. *State v. Ordway*, 619 A.2d 819, 826 (R.I.1992).

"Determination of whether a challenged remark is harmful or prejudicial cannot be decided by any fixed rule of law. * * * Rather, the justice must evaluate its probable effect on the outcome of the case by examining the remark in its factual context. * * * Prejudice clearly inheres if the challenged comments 'are totally extraneous to the issues in the case and tend to inflame and arouse the passions of the jury' against the defendant.

"* * * * * *

"[R]eversible error occurs if the allegedly improper comment was so flagrantly impermissible that even a precautionary instruction would have been insufficient to dispel the prejudice in the jurors' minds and to assure defendant a fair and impartial trial." *Id.* (quoting *State v. Collazo*, 446 A.2d 1006, 1010 (R.I.1982)).

■ Applying these guidelines, we are of the opinion that in the total context of this case the comments made by the prosecutor would not have the result of inflaming the passions of the jurors to a point where they could not impartially pass upon the issues in this case. Additionally we believe that the trial justice's instruction was adequate in the circumstances. Furthermore, although Hernandez made approximately eight objections to the trial justice's instructions, the record is absent a specific objection to her requested instruction's not being given. Consequently any review beyond Hernandez's contention that the trial justice erred by her failure to pass the case is barred by her failure to object to her specific instruction's not being given. *See State v. Medeiros*, 599 A.2d 723, 727 (R.I.1991); Rule 30 of the Superior Court Rules of Criminal Procedure.

■ The prosecutor's comments did not inform the jury that Hernandez owned the contents of the safe-deposit box. The jury, by noting where the key to the box was found, could logically infer that Hernandez had access to the box and that is what the prosecutor was suggesting by his comment. We believe that the inference that Hernan-

dez, at the very least, had access to the safe-deposit box was a fair and a legitimate one in the circumstances in which the key to the box was found. *See generally State v. Padula*, 551 A.2d 687, 691 (R.I.1988).

Hernandez next contends that the trial justice erred in denying her motion for a judgment of acquittal. She contends that the evidence did not support a finding that she had constructive possession of the heroin. The state avers that there was a plethora of circumstantial evidence supporting many reasonable inferences that Hernandez constructively possessed the heroin.

In ruling on a motion for a judgment of acquittal, a trial justice "must view the evidence in the light most favorable to the state, without weighing the evidence or assessing the credibility of the witnesses, and draw all reasonable inferences that are consistent with guilt." *State v. Clark*, 603 A.2d 1094, 1097 (R.I.1992). This court, in reviewing a trial justice's denial of a motion for judgment of acquittal, applies the same standards in determining whether that decision was correct. *State v. Henshaw*, 557 A.2d 1204 (R.I.1989). If that examination reveals sufficient evidence to warrant a jury verdict of guilt beyond a reasonable doubt, the trial court was proper in its denial of the motion. *Clark*, 603 A.2d at 1097–98. Circumstantial and direct evidence are given equal weight. *State v. Roddy*, 401 A.2d 23 (R.I.1979).

In Rhode Island a person can be held to have constructively possessed a narcotic although it was not in his or her immediate physical possession. *State v. Jenison*, 442 A.2d 866 (R.I.1982). In order to establish constructive possession, the state is required to prove that (1) the defendant had knowledge of the presence of the item and (2) the defendant intended to exercise control over the item. *State v. Mercado*, 635 A.2d 260, 262 (R.I.1993). Proof of knowledge of the item and the defendant's intent to exercise control over the item can be inferred from a totality of the circumstances. *Jenison*, 442 A.2d at 875. The proof of knowledge, however, must precede control over the item. *State v. Colbert*, 549 A.2d 1021, 1023–24 (R.I.1988). "Constructive possession may

be exclusive or joint." *Mercado*, 635 A.2d at 263.

Our analysis commences with the question of whether Hernandez had knowledge of the heroin's presence in the house. We believe that the circumstantial evidence and the reasonable inferences flowing therefrom support the premise that Hernandez had knowledge of the presence of the heroin. The state introduced a utility bill for the premises and a quitclaim deed to the premises, both in the name of Hernandez. The possession of a controlled substance can *"give rise to the inference* that the possessor knows what he [or she] possesses, *especially* if it is in his [or her] hands, on his [or her] person, in his [or her] vehicle, *or on his [or her] premises."* (Emphasis added.) *State v. Sundel*, 121 R.I. 638, 645, 402 A.2d 585, 589 (1979). We emphasize that in the situation in which the item is found at a person's residence, ownership or a possessory interest in the residence alone is not dispositive of the issue of knowledge of the item's presence. *See State v. Motyka*, 111 R.I. 38, 298 A.2d 793 (1973); *Commonwealth v. Hannan*, 229 Pa.Super. 540, 331 A.2d 503 (1974). Hence, the utility bill and the quitclaim deed do not conclusively prove but merely support an inference of knowledge.

The record reflects that Hernandez's husband and possibly a teenage female, a small child, and two other males may have resided at the premises. "[I]f the possession of the premises is not exclusive, knowledge of the presence of the substance and its character may not be reasonably inferred from the possession alone. Rather, the inference must be supported by additional circumstances." *Carnes v. State*, 480 N.E.2d 581, 586 (Ind. Ct.App.1985). Constructive possession may occur when the place where the substance was found was in the joint dominion and control of the accused and another. *Mercado*, 635 A.2d at 263; *Cary v. State*, 259 Ark. 510, 534 S.W.2d 230 (1976). The fact that another person had an equal right and the ability to access the premises will not negate a finding of joint constructive possession. *Mercado*, 635 A.2d at 263; *People v. Murray*, 198 Cal.App.2d 805, 18 Cal.Rptr. 280 (1962). Consequently, because it ap-

pears that Hernandez did not have exclusive possession of the premises and joint constructive possession is a viable inference, our analysis must continue. *See Mercado,* 635 A.2d at 263.

■ The record reflects that 2,490 packets of heroin were found on a shelf in an open closet located in what was described as a "spare bedroom." Considerable evidentiary weight must be afforded the fact that the controlled substance was heroin. *State v. Brown,* 80 N.J. 587, 404 A.2d 1111 (1979). "Since possession or use of the heroin engenders a substantial penal threat, it is extremely unlikely that [such a large amount of] heroin could turn up in a person's residence without his [or her] awareness." *Id.* at 595, 404 A.2d at 1115. We acknowledge that although it is unlikely, certain circumstances may arise when the presence of heroin on the premises may be unknown to some of its residents. We do not believe that that is the case with regard to Hernandez.

■ The inference of knowledge (and for that matter control) is further strengthened by the presence of other heroin-related paraphernalia found in a kitchen cabinet amongst miscellaneous cooking utensils. *See id.; see also People v. Murray,* 198 Cal.App.2d 805, 18 Cal.Rptr. 280 (1962). The fact that the quinine and the elastic bands were found in the kitchen and not in the same room as the heroin supports the inference that Hernandez had knowledge of the heroin's presence.

Furthermore two twelve-gauge shotguns, ammunition, and $7,800 were found in a dead-bolted closet in the den. The search of the closet also revealed men's, women's, and children's clothing. The presence of these different types of clothing raises an inference that access to the closet was not limited to one particular individual. Additionally, tolerance of a dead bolt on a den. closet, visible to most visitors who enter the premises, may also raise an inference of knowledge of its contents but more importantly the purpose or the reason behind its contents. Furthermore the safe-deposit box contained two gold rings and $1,250. The key to that box was found in the master bedroom. The large amount of cash seemingly available to Her-

nandez would appear inconsistent with the requirements for the eligibility of public assistance, yet consistent with the inference of the sale of a controlled substance. *See generally Sweat v. State,* 25 Ark.App. 60, 752 S.W.2d 49 (1988). The heroin, the heroin paraphernalia, and the drug-related indicia were not found secreted in one room; rather they were found about the entire premises.

The record also reflects that the premises had been under surveillance for about a month. Lepore testified that during the late afternoons and early evenings of the surveillance there were occasions when he observed a substantial amount of activity at the house with people entering and exiting over a short period. This activity is consistent with illicit drug activity. In fact the confidential informant purchased drugs from a person in the house. Hence a fair inference can be drawn that narcotics traffic occurred at the house. *See generally Cary v. State,* 259 Ark. 510, 534 S.W.2d 230 (1976); *Sweat v. State,* 25 Ark.App. 60, 752 S.W.2d 49 (1988). Therefore, the jury could have inferred that Hernandez, as a resident of the house with a proprietary interest in it, was aware of its "questionable" high-volume visitor traffic.

If viewed in a vacuum, no single factor would be sufficient to show that Hernandez had knowledge of the heroin's presence on the premises. However, when viewing all the above factors together in the totality of the circumstances, we believe that it was reasonable for the jury to draw an inference that she had knowledge of the heroin's presence on the premises. The factors noted lead this court to the conclusion that Hernandez perceived the presence, nature, and character of the controlled substance.

■ We also believe that an inference of dominion and control was not unreasonable. "[P]roof of a possessory interest in the premises in which contraband is found is adequate to show the *capability* to maintain control and dominion over the contraband." *Carnes,* 480 N.E.2d at 585. The heroin was found in Hernandez's residence on a shelf in an open closet in a spare bedroom. It was not found in the separate remodeled basement apartment. Additionally the presence of the drug

paraphernalia in the kitchen and the contents of the dead-bolted closet in the den. support the inference of control. However, what completes our inferential analysis is the fact that the premises were extensively remodeled. The record reflects that the kitchen was extensively remodeled and that the basement had been converted into a two-bedroom apartment. The trial justice noted that the seller of the heroin "reap[ed] enormous profit." We believe that the evidence shows that Hernandez benefited from the sale of the heroin and that it was thus reasonable for the jury to infer that she maintained control over the contraband. We think it unreasonable and inconsistent for a person to profit from the sale of a controlled substance while maintaining that he or she had no control over its possession, procurement, or distribution. "[I]t runs counter to human experience to suppose that criminal conspirators would welcome innocent nonparticipants as witnesses to their crimes." *United States v. Batista–Polanco*, 927 F.2d 14, 18 (1st Cir.1991).

The inferences noted are rational and are not based on conjecture or speculation. " 'In this jurisdiction the state may rest its case entirely upon circumstantial evidence without disproving any speculation or inferences of innocence.' " *State v. Simpson*, 611 A.2d 1390, 1394 (R.I.1992). In viewing this case in the totality of the circumstances, we conclude that the evidence and reasonable inferences flowing therefrom were sufficient to prove constructive possession beyond a reasonable doubt. The state established a pattern of corroborating circumstances. "[A] comprehensive web of strong circumstantial evidence existed to establish defendant's knowledge of the heroin and [her] intent to control it." *Mercado*, 635 A.2d at 263.

Hernandez next contends that the trial justice erred in denying her motion for a new trial based on newly discovered evidence that was not available to her at trial. The state avers that this "new evidence" was both discoverable and available to Hernandez at the time of her trial.

■ This court will not disturb the decision of a trial justice on a motion for a new trial unless he or she overlooked or misconceived relevant and material evidence or was otherwise clearly wrong. *State v. Brown*, 528 A.2d 1098, 1104 (R.I.1987). When a motion for a new trial is based on newly discovered evidence, that evidence must satisfy a two-pronged test. *Id.* The first prong of this test consists of a four-part evaluation. *Id.* If the newly discovered evidence is to serve as the foundation for a new trial, (1) it must be newly discovered since trial, (2) the defendant must have been diligent in his or her attempts to discover the evidence for use at the original trial, (3) the evidence must not be merely cumulative or impeaching, but rather it must be material to the issue, and (4) the newly discovered evidence must be the type that would probably change the verdict at the new trial. *Id.* at 1104. If this four-pronged threshold analysis is satisfied, the trial justice must then determine whether the newly discovered evidence is "credible enough to warrant a new trial." *Id.*

■ At the hearing on the motion for a new trial Hernandez offered the testimony of her attorney regarding a conversation that he had had with Lepore after the trial had concluded. Her attorney asserted that Lepore informed him in a telephone conversation that the detective believed it was Hernandez's sons who were responsible for conducting the narcotics transactions. The defense counsel asserted that Lepore told him that his belief was formed on the basis of information obtained from the confidential informant.

Lepore's testimony at the hearing on the motion for the new trial does not reflect the representations of defense counsel. Lepore testified that he did talk to defense counsel after the trial was completed. He testified that at that time he informed defense counsel that he believed that the sons were involved in the *dispersing* of the narcotics from the house but that he could not prove that belief. He stated that although he personally believed Hernandez's son Roberto was the "Spanish male" described in the affidavit, he had no evidence to substantiate that contention. He explicitly testified that he did not base his conjecture that the sons were involved on anything that the informant told him. He also stated that he had not in-

formed defense counsel that he thought that the sons were responsible for the presence of the drugs at the residence.

The record reflects that Hernandez had access to the affidavit of the confidential informant and the information contained in the search warrant. Lepore's conjectures were based simply upon the information contained in these documents. The record does not reflect that Lepore withheld any information or that Hernandez discovered new evidence that was not available to her at trial. Consequently any evidence available to Hernandez regarding Lepore's hypotheses or intuition was available to her at the trial.

 Hernandez next claims that newly discovered evidence surfaced in the form of the testimony of her niece, Jezebel Fernandez (Fernandez), and her daughter, Ivanis Hernandez (Ivanis). At the hearing on the motion for a new trial Fernandez testified that it was she who received the packages containing the heroin from Ernesto Hakim (Hakim), a friend of Roberto. She testified that Hakim had instructed her to put the packages away for Hernandez's son Roberto. Ivanis testified that she was present at the house when Hakim delivered the packages. She stated that she overheard Hakim tell Fernandez that the packages were for Roberto. She further testified that she had not come forward previously because she was convinced that a jury would never find her mother guilty.

The record reflects that Fernandez was present and on the premises when Hernandez was arrested. Furthermore she lived at 172 Melrose Street for some nine months after Hernandez was arrested before she relocated to New York. Defense counsel failed to interview her in the nine months after Hernandez's arrest, nor did he interview her during the remaining twelve or so months before trial. Defense counsel was not diligent in attempting to discover this evidence for use at the trial. Consequently Fernandez's testimony does not pass the threshold test for newly discovered evidence.

 As the trial justice noted, Hernandez also had "peculiar and unique access" to the information which was provided by her daughter, Ivanis. Although we question whether defense counsel was diligent in attempting to discover this evidence, we need not determine whether this proposed new evidence would have passed the threshold test. Had this evidence in fact passed the threshold test, we would not have found it credible.

We believe that the record reflects a number of inconsistencies between the testimony of Fernandez and that of Ivanis. Furthermore Ivanis testified that although she had been interviewed twice by her mother's attorney, she "never told him the truth." She testified that the testimony regarding the delivery of the packages "came out when we all got together and we decided to say what really happened that day * * *." She stated that she never informed her mother's attorney of this information because she was protecting Fernandez, herself, and Roberto. Given Hernandez's relationship with Ivanis and Fernandez, we find it difficult to believe that Hernandez remained unaware of what Fernandez and Ivanis allegedly knew regarding the delivery of the packages. In fact this uneasiness is supported by Fernandez's testimony that as Hernandez was being arrested, Fernandez asserted that she stated that she knew from where the packages had come.

During trial Ivanis was well aware of the state of the evidence as she had sat through most of the proceedings, yet she said nothing because she was confident that her mother would be acquitted. Ivanis' withholding of what she now believes is exculpatory evidence undermines her credibility. Additionally her references to "deciding" to tell the truth raise a serious question of her credibility. Any possibility that Ivanis' testimony would be "newly discovered" was destroyed by this lack of credibility.

 At the hearing on the motion for a new trial Hernandez also introduced evidence that the quitclaim deed transferring the premises to her had never been recorded. A land-evidence-records clerk testified that, according to city records, someone other than defendant owned the property at the time of the search. The clerk confirmed that the quitclaim deed had never been recorded. The trial justice correctly concluded that the

land-evidence records had been available to Hernandez before trial and could have been developed by her for her use during the original trial. We agree with the trial justice's analysis. Consequently the testimony of the clerk fails the threshold test and is not newly discovered evidence.

■ Finally Hernandez claims that the trial justice erred in denying her motion for a continuance. The state contends that the trial justice soundly exercised her discretion in denying the motion for a continuance. The record reflects that at the close of the morning session on the second day of trial, defense counsel moved for a second continuance on the grounds that he was scheduled to appear on the following day before the United States Court of Appeals for the First Circuit. The trial justice denied his motion. The testimony concluded on the afternoon of the second day of trial. On the following day Hernandez was represented by another attorney for a review of the jury instructions. Hernandez avers that she was prejudiced because of the "appearance of being abandoned by her own counsel in the middle of trial."

We believe this argument to be without merit. We note that at the time the new attorney appeared, it was not the "middle of trial." The testimony had been concluded, and jury instructions were scheduled. Additionally Hernandez's counsel ignores the fact that he already had been granted a half-day's continuance in order to appear in a different matter in Washington County. He had been warned by the trial justice that this was the only continuance that she would grant. When she granted defense counsel's first request for a continuance, the record reflects that the trial justice apologized to the jury for the unexpected halt in the proceedings and emphasized to the attorneys that this would be the only continuance granted.

"Ladies and gentlemen, in this particular matter, [defense counsel] had had a commitment before another judge that has been long-standing that's going to occur this afternoon that's in Washington County. If none of you have any objection, I'll excuse you for the day, but only today * * *. *And once we start the testimony tomorrow, the attorneys cannot be excused from this particular matter.*" (Emphasis added.)

Defense counsel was conspicuously silent after this warning. The record indicates that at the conclusion of testimony on the second day of trial defense counsel explicitly called attention to the trial justice's remarks in asking for his second continuance. He stated that he "realize[d] what the Court had said yesterday about being excused" but again asked the court for another continuance.

The granting or the denial of a motion for a continuance rests within the sound discretion of the trial justice and should not be disturbed absent an abuse of discretion. *State v. Usenia*, 599 A.2d 1026, 1031 (R.I. 1991). The record is absent any due diligence on the part of defense counsel. This court has deemed motions for continuances properly denied when the defendants wait until the start of their trials to inform the courts of potential problems. *See State v. Kennedy*, 586 A.2d 1089 (R.I.1991); *State v. Ashness*, 461 A.2d 659 (R.I.1983). In this instance the defense counsel had every opportunity to inform the trial justice of his commitment before the start of the trial and even had that opportunity on the first day of trial. He chose to do neither. In fact it does not assist Hernandez's position that defense counsel informed the trial justice of one commitment and failed to mention the other wholly predictable conflict. The necessity for the efficient and effective administration of justice outweighed Hernandez's interest in securing counsel of her choice. *See* 461 A.2d at 663–64. Furthermore no prejudice resulted from this de minimis intrusion into Hernandez's right of counsel of her choice; in fact, this entire situation could and should have been avoided by better communication and case management by defense counsel.

Consequently, the defendant's appeal is denied. The judgment of the Superior Court is affirmed, and the papers of this case are remanded to the Superior Court.